1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,         : 23-CR-00246(ARR)
                                  :
                                  :
        -against-                 : United States Courthouse
                                  : Brooklyn, New York
                                  :
                                  :
                                  : Tuesday, June 27, 2023
ZHIBIN LAI,                       : 2:00 p.m.
                                  :
            Defendant.            :
                                  :
- - - - - - - - - - - - - - - - - X

             TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
               BEFORE THE HONORABLE ALLYNE R. ROSS
               UNITED STATES SENIOR DISTRICT JUDGE


                    A P P E A R A N C E S:

For the Government: BREON PEACE, ESQ.
                        United States Attorney
                        Eastern District of New York
                        271 Cadman Plaza East
                        Brooklyn, New York 11201
                    BY:  ANDREW ESTES, ESQ.
                        Assistant United States Attorney


 For the Defendant:     SPODEK LAW GROUP, P.C.
                        85 Broad Street
                        30th Floor
                        New York, New York 10004
                    BY:  TODD A. SPODEK, ESQ.


Court Reporter:  Stacy A. Mace, RMR, CRR
                 Official Court Reporter
                 E-mail:  SMaceRPR@gmail.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.
```

*Proceedings*                                                    2

1                      (In open court.)

2              THE COURTROOM DEPUTY:  All rise.

3              (Judge ALLYNE R. ROSS entered the courtroom.)

4              THE COURT:  Please be seated.

5              THE COURTROOM DEPUTY:  United States of America

6   against Lai, docket number CR-23-246.

7              For the Government, please state your name for the

8   record.

9              MR. ESTES:  Good afternoon, Your Honor.

10             Andrew Estes for the Government.

11             THE COURT:  Good afternoon.

12             MR. SPODEK:  Good afternoon, Your Honor.

13             Todd Spodek for Mr. Lai.

14             THE COURT:  Good afternoon.

15             Mr. Spodek, what does your client wish to do?

16             MR. SPODEK:  Judge, at this point my client does

17  wish to enter into an agreement that has been signed and

18  reviewed and plead guilty, Your Honor.

19             THE COURT:  Okay.

20             And he wishes to enter a guilty plea?

21             MR. SPODEK:  That's correct, Judge.

22             THE COURT:  Okay.

23             Mr. Lai, as we go through the Waiver of Indictment

24  and guilty plea, there are many questions that I have to ask

25  you and many things that I have to explain to you.  It is very

*Proceedings* 3

1 important that you understand everything I ask and everything

2 I explain.  So if there is anything at all that you do not

3 fully understand, please just stop me and I will express

4 myself differently until you do understand me.

5         All right?

6         THE DEFENDANT:  Okay, Your Honor.

7         THE COURT:  Okay.

8         THE COURTROOM DEPUTY:  Please stand and raise your

9 right hand.

10         Do you solemnly swear the testimony you give to this

11 Court in this case will be the truth, the whole truth, and

12 nothing but the truth, so help you God?

13         THE DEFENDANT:  I do.

14         (Defendant sworn.)

15         THE COURTROOM DEPUTY:  Please state your name for

16 the record.

17         THE DEFENDANT:  Zhibin Lai.

18         THE COURTROOM DEPUTY:  Thank you.

19         Just directly into that microphone, speak very loud.

20 Okay.  It doesn't move.

21         THE DEFENDANT:  Okay.

22         THE COURT:  Mr. Lai, do you understand that having

23 been sworn, now that you are under oath, your answers to my

24 questions would be subject to another prosecution for perjury

25 or a false statement if you did not answer them truthfully?

*Proceedings*                                                                 4

1         THE DEFENDANT:  Yes.

2         THE COURT:  Okay.

3         How old are you?

4         THE DEFENDANT:  Thirty-seven years old.

5         THE COURT:  Okay.

6         And how far did you go in school?

7         THE DEFENDANT:  I got Doctorate degree in pharmacy.

8         THE COURT:  Okay.

9         Are you now or have you recently been under the care

10  of a physician or a psychiatrist?

11        THE DEFENDANT:  No.

12        THE COURT:  In the last twenty-four hours, have you

13  taken any narcotic drugs or medicine or pills of any kind or

14  drunk any alcoholic beverage?

15        THE DEFENDANT:  No.

16        THE COURT:  Have you ever been hospitalized or

17  treated for narcotic addiction?

18        THE DEFENDANT:  No.

19        THE COURT:  Is your mind clear?

20        THE DEFENDANT:  Yes.

21        THE COURT:  You understand what is going on in this

22  proceeding?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Okay.

25        Have you received a copy of the Information, that is

1    the document that sets forth the charge that the United States

2    Attorney proposes to bring against you?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Did you read it?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Did you discuss it with your lawyer?

7              THE DEFENDANT:  I did.

8              THE COURT:  Do you understand it?

9              THE DEFENDANT:  I do.

10              THE COURT:  Okay.  I am going to go through it with

11    you once more, and if you have any question at all as to what

12    any aspect means, I want you to ask me or ask Mr. Spodek.

13    Okay?

14              THE DEFENDANT:  Okay.

15              THE COURT:  It starts with an introduction,

16    initially giving some background and description of the

17    Medicare and Medicaid programs.

18              Then in paragraph 6 it goes on to describe the

19    over-the-counter nonprescription items and the regulations

20    relating to that.

21              You understood all of that?

22              THE DEFENDANT:  Yes.

23              THE COURT:  Okay.

24              It explains in paragraphs 8 and 9 that the

25    pharmacies typically submit their claims electronically to the

*Proceedings*                                                    6

1  Plans in order to receive reimbursement, and that by

2  submitting the claim to the Plans, the provider certified,

3  among other things, that the services were rendered to the

4  patient, that they were medically necessary, and that they

5  were not procured as a result of kickbacks or bribes.

6          It goes on to relate that you were a pharmacist

7  licensed by New York State and you were the supervising

8  pharmacist of 888 Pharmacy, Inc., and for a period of two

9  years from January of '21 to December of '22 you were also a

10  part owner of the pharmacy.  That the pharmacy was a retail

11  pharmacy located in Brooklyn.  That Co-Conspirators 1, 2 and 3

12  were part owners of the pharmacy.  That what's referred to as

13  Medical Practice-1 was a medical practice in Brooklyn, and

14  that Individual 1 was enrolled as a Medicare beneficiary and a

15  Medicaid recipient and filled prescriptions at your pharmacy.

16          It goes on to describe that between approximately

17  September of 2020 and December of 2022, you and others agreed

18  to execute and executed a scheme to submit claims to the Plans

19  for dispensing pharmaceutical and over-the-counter products

20  that were medically unnecessary, procured by kickbacks and

21  bribes, and not provided to Medicare beneficiaries and

22  Medicaid recipients.

23          And that as part of the scheme, you and other

24  employees of the pharmacy, including Co-Conspirator 1, offered

25  in-store credit to Medicare beneficiaries and Medicaid

1  recipients who filled prescriptions at the pharmacy and

2  debited the over-the-counter cards that were funded by the

3  Plans for products that were not actually dispensed, instead

4  providing the equivalent in supermarket gift certificates and

5  cash.

6          And it goes on to allege that you and other pharmacy

7  employees referred beneficiaries and recipients, including

8  Individual 1 to Medical Practice-1, where they were prescribed

9  medically unnecessary medications, including pain patches, and

10 the prescriptions were then filled at your pharmacy.

11         That you and others, including all three

12 co-conspirators, paid illegal kickbacks and bribes to the

13 medical practice in the form of salary, staff and rent in

14 exchange for the ordering and referral of prescriptions to

15 your pharmacy by the medical providers.

16         And that in or about and between September of 2020

17 and December of 2022, Medicare paid the pharmacy approximately

18 $2.2 million and Medicaid paid it approximately $600,000, as a

19 result of the submission of false and fraudulent claims for

20 prescriptions that were medically unnecessary and induced by

21 the payment of illegal kickbacks and bribes.

22         And then it goes on to allege conspiracy to commit

23 health care fraud, specifically that between approximately

24 September of 2020 and December of '22, in this district and

25 elsewhere, you and others knowingly and willfully conspired,

*Proceedings*                                                    8

1    that simply means agreed, to execute a scheme to defraud one

2    or more health care benefit programs, as defined by federal

3    law, and specifically Medicare and Medicaid, and to obtain by

4    means of materially false and fraudulent pretenses and

5    representations, money and property under the custody and

6    control of Medicare and Medicaid, in connection with the

7    delivery of a payment for health care benefits, items and

8    services, contrary to law.

9              Do you understand the charge?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Okay.

12             Do you know that you have a right under the

13   Constitution to be charged by an Indictment by a Grand Jury,

14   but you can give up that right and consent to being charged by

15   an Information?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you understand that?

18             THE DEFENDANT:  Yes, I do.

19             THE COURT:  Okay.

20             Do you understand that unless you waive your right

21   to be indicted, you could not be charged with this crime, as

22   it is a felony, unless a Grand Jury determined by returning an

23   Indictment that there was probable cause to believe that you

24   committed this crime?

25             Do you understand that?

*Proceedings* 9

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Okay.

3          Do you understand that if the Government presented

4   this case to the Grand Jury, the Grand Jury might or might not

5   indict you?

6          THE DEFENDANT:  I do.

7          THE COURT:  And that a Grand Jury is composed of at

8   least 16, but not more than 23 persons, and at least 12 grand

9   jurors would have to find that there was probable cause to

10  believe that you committed this crime before you could be

11  indicted for this crime?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And that if you give up your right to an

14  Indictment, the case is going to proceed against you simply

15  based on this Information, simply by the United States

16  attorney filing this document with the Court?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Okay.

19         Have you discussed the matter of waiving your right

20  to indictment by a Grand Jury with Mr. Spodek?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you understand that right?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Have any threats or promises been made

25  to induce you to give up that right?

*Proceedings*                                                          10

1          THE DEFENDANT:  No.

2          THE COURT:  Do you wish to give up that right and

3    proceed instead on the Information?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.

6          Mr. Spodek, is there any reason why your client

7    should not waive indictment?

8          MR. SPODEK:  No, Your Honor.

9          THE COURT:  Okay.  I have here a Waiver of

10   Indictment form.

11         Is that your signature on the form?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And before you signed it, did you read

14   it?

15         THE DEFENDANT:  Yes.

16         THE COURT:  You understood it?

17         THE DEFENDANT:  Yes.

18         THE COURT:  You discussed it with your lawyer?

19         THE DEFENDANT:  I did.

20         THE COURT:  The record should reflect that

21   Mr. Spodek has also signed the form, and I am witnessing it.

22         Mr. Spodek, have you discussed the matter of

23   pleading guilty thoroughly with your client?

24         MR. SPODEK:  Yes, Your Honor.

25         THE COURT:  Does he understand the rights he would

*Proceedings* 11

1  be waiving by pleading guilty?

2          MR. SPODEK:  Yes, Your Honor.

3          THE COURT:  Is he capable of understanding the

4  nature of the proceedings?

5          MR. SPODEK:  Yes, Your Honor.

6          THE COURT:  Do you have any doubt as to his

7  competence to plead at this time?

8          MR. SPODEK:  No, Your Honor.

9          THE COURT:  Have you advised him of the maximum

10  sentence and fine that can be imposed and discussed with him

11  the advisory Sentencing Guidelines and the other statutory

12  sentencing factors?

13          MR. SPODEK:  Yes, Your Honor.

14          THE COURT:  Okay.

15          Mr. Lai, have you had plenty of time to discuss your

16  case with your lawyer?

17          THE DEFENDANT:  Yes, I did.

18          THE COURT:  And are you satisfied to have him

19  represent you in this proceeding?

20          THE DEFENDANT:  Yes.

21          THE COURT:  We have already reviewed the Information

22  and you have indicated that you understood it thoroughly.  Is

23  that correct?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you understand that you have the

1  right to plead not guilty to the charge?

2          THE DEFENDANT:  Yes, I understand.

3          THE COURT:  And if you did, under the Constitution

4  and under the laws of the United States, you would be entitled

5  to a speedy and public trial by jury with the assistance of

6  your counsel on the charges in the Information, and in that

7  regard you would be entitled to his assistance throughout

8  every aspect of the criminal proceeding against you.

9          Do you understand that?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  At the trial you would be presumed to be

12  innocent and the Government would have to overcome that

13  presumption and prove you guilty by competent evidence beyond

14  a reasonable doubt.  You would not have to prove that you were

15  innocent.

16          If the Government were to fail to prove you guilty

17  beyond a reasonable doubt, the jury would have the duty to

18  find you not guilty.

19          Do you understand that?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  In the course of the trial, the

22  witnesses for the Government would have to come into court and

23  testify in your presence.  Mr. Spodek would have the

24  opportunity to cross-examine the Government's witnesses, to

25  object to any evidence the Government offered, and to offer

*Proceedings*                                                             13

1   evidence on your behalf.  And in that regard, he would have

2   the right to compel the attendance of witnesses to testify in

3   your behalf.

4            Do you understand that?

5            THE DEFENDANT:  Yes, I understand.

6            THE COURT:  Okay.

7            At a trial, while you would have the right to

8   testify if you chose to do so, you couldn't be required to

9   testify.  Under the Constitution of the United States, you

10  cannot be compelled to incriminate yourself.  You cannot be

11  required to say anything that would in any way indicate your

12  guilt of the crime with which you are charged.

13           If you chose not to testify, I would instruct the

14  jury that they could not hold that against you in any way.

15           Do you understand that?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  Okay.

18           Now, if you plead guilty and your guilty plea is

19  accepted, you are going to be giving up your constitutional

20  right to a trial and all the other rights that I just

21  described.  There would be no further trial of any kind and no

22  right to appeal from a judgment of guilty.  I would simply

23  enter a judgment of guilty on the basis of your guilty plea.

24           Do you understand that?

25           THE DEFENDANT:  Yes.

*Proceedings*                                                               14

1          THE COURT:  Also, if you plead guilty I am going to

2    have to ask you questions about what it was that you did in

3    order to satisfy myself that you actually are guilty of the

4    crime to which you seek to plead guilty.  You will have to

5    answer my questions and acknowledge your guilt.

6          So, in effect, you are going to be giving up the

7    right not to say anything that would in any way indicate your

8    guilt.

9          You understand that?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Are you willing to give up your right to

12   a trial and all the other rights that I have just described?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Okay.

15         I have what's been marked as Government Exhibit

16   Number 1 in your case, a written agreement.

17         Turning to the last page, is that your signature on

18   the agreement?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Before you signed it, did you read it?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Did you discuss it with your lawyer?

23         THE DEFENDANT:  I did.

24         THE COURT:  Do you understand it?

25         THE DEFENDANT:  Yes, I do.

*Proceedings*                                                    15

1        THE COURT:  Is there anything at all in that entire

2   agreement that you do not fully understand?

3        THE DEFENDANT:  No.

4        THE COURT:  Do you understand that that written

5   agreement sets forth your whole agreement with the Government

6   relating to your guilty plea in this case?

7        THE DEFENDANT:  Yes.

8        (Government's Exhibit 1 was so marked.)

9        THE COURT:  Do you know the longest prison term that

10  could be imposed upon your guilty plea under the statute?

11       THE DEFENDANT:  Yes.

12       THE COURT:  So you understand you could be sentenced

13  for up to ten years?

14       THE DEFENDANT:  Yes.

15       THE COURT:  Do you understand that you would also be

16  subject to a term of supervised release of three years?

17       THE DEFENDANT:  Yes.

18       THE COURT:  Do you know what a term of supervised

19  release is?

20       THE DEFENDANT:  Yes, I do.

21       THE COURT:  Okay.  So you understand that is a

22  period of time that you serve after you are released from

23  prison.  You are not in prison, but there are many constraints

24  on your liberty.  So many I can't even begin to describe all

25  of them for you now.

*Proceedings*                                                          16

1          But if you were to breach any of the conditions of

2    your supervised release while you were out on supervised

3    release, you could be sent back to prison for up to two years

4    without any credit for any of the time you may have spent out

5    on supervised release.

6          Do you understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Okay.

9          Do you understand that you could be fined the

10   greater of $250,000 or twice the gross gain or loss from the

11   conduct?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Do you understand that you will be

14   required to make restitution in the amount of $2,513,191.70?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you understand that I must impose a

17   special assessment, which is like a fine, of $100?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And you will have to pay a criminal

20   forfeiture in the amount of $327,959?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  And finally, that you would be excluded

23   from Medicare, Medicaid, and all federal health care programs

24   as set forth in paragraph 21 of the agreement?

25         THE DEFENDANT:  Yes, Your Honor.

*Proceedings*                                                          17

1          THE COURT:  Now, the United States Sentencing

2     Commission has issued advisory Sentencing Guidelines that I

3     must consider, along with a great number of other statutory

4     sentencing factors, in determining a sentence.

5          Have you and Mr. Spodek talked about how these

6     matters might apply in your case?

7          THE DEFENDANT:  We did.

8          THE COURT:  Do you understand that I am not going to

9     be able to determine the guidelines sentence that applies in

10    your case until after the Probation Department has prepared a

11    pre-sentence report and you and Mr. Spodek and the prosecutor

12    have had an opportunity to review the report and object to any

13    of the findings made by the Probation Department?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Do you also understand that if sentenced

16    to a prison term, you will be required to spend the entire

17    period of that prison term in prison?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Okay.

20         Mr. Estes, can you advise me of the anticipated

21    advisory guideline range?

22         MR. ESTES:  Yes, Your Honor.

23         The Government estimates that the guidelines range

24    would be a 26, that's based on a base offense level of 6,

25    under Section 2B1.1, as well as with enhancements for a loss

*Proceedings* 18

1   over $1.5 million, for an additional 16 levels, an additional

2   2 for being a health care offense where the loss exceeds

3   $1 million, and also an additional two levels for an abuse of

4   trust enhancement.  At 26, assuming this defendant has a

5   Criminal History Category of I, that results in an advisory

6   guidelines range of 63 to 78 months before acceptance of

7   responsibility.

8            THE COURT:  Okay.

9            Mr. Spodek, anything to add to that?

10           MR. SPODEK:  No, Judge.  I believe that's accurate.

11           THE COURT:  Okay.

12           Mr. Lai, do you understand what the lawyers have

13   said?

14           MR. SPODEK:  Judge, can I have one moment?

15           THE COURT:  Yes.

16           (Pause.)

17           THE DEFENDANT:  Yes, I do.

18           THE COURT:  I'm sorry?

19           THE DEFENDANT:  I understand.

20           THE COURT:  You understand?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  Okay.  But you understand they are just

23   estimating, they are just guessing, they could be wrong.  It

24   could turn out that the advisory guideline range that applies

25   to you is even higher than what they estimate it will be; and

1  it could also turn out that because of those other statutory

2  sentencing factors, I might choose to impose a sentence that

3  is even higher than the one called for by the advisory

4  sentencing guidelines.  And if any of those things were to

5  happen, you would not be permitted to withdraw your guilty

6  plea simply because no one could tell you in advance what your

7  sentence would be.

8             Do you understand that?

9             THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  Okay.  And do you understand that in

11  paragraph 3 of the agreement you have agreed, among other

12  things, not to file an appeal or otherwise challenge your

13  conviction or sentence by habeas corpus petition or any other

14  provision of law if I impose a prison term of 63 months or

15  less?

16            THE DEFENDANT:  Yes, Your Honor.

17            THE COURT:  Do you have any questions that you want

18  to ask me about the charge against you or your rights or

19  anything relating to this proceeding?

20            THE DEFENDANT:  No, Your Honor.

21            THE COURT:  Okay.

22            Are you ready to enter a plea?

23            THE DEFENDANT:  Yes.

24            THE COURT:  Mr. Spodek, do you know of any reason

25  why your client should not plead guilty to the charge in the

1  Information?

2          MR. SPODEK:  No, Your Honor.

3          THE COURT:  Okay.

4          Mr. Lai, how do you plead to the charge, do you

5  plead not guilty or do you plead guilty?

6          THE DEFENDANT:  I plead guilty.

7          THE COURT:  Okay.

8          THE DEFENDANT:  Your Honor.

9          THE COURT:  Are you making the guilty plea

10 voluntarily and of your own free will?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Has anyone threatened, forced or coerced

13 you in any way to plead guilty?

14         THE DEFENDANT:  No, Your Honor.

15         THE COURT:  Other than the agreement with the

16 Government that is set forth, the various agreements that are

17 set forth in Government's Exhibit Number 1, has anyone made

18 any promise to you that has caused you to plead guilty?

19         THE DEFENDANT:  No, Your Honor.

20         THE COURT:  Has anyone made any promise to you as to

21 what your sentence will be?

22         THE DEFENDANT:  No, Your Honor.

23         THE COURT:  Okay.

24         Did you, between approximately September of 2020 and

25 December of 2022, in this district and elsewhere, knowingly

1   and intentionally agree with others to execute a scheme to

2   defraud Medicare and Medicaid and to obtain by false

3   representations money and property owned by and under the

4   control of those programs in connection with the delivery of a

5   payment for health care benefits, items and services?

6          THE DEFENDANT:  Yes, I did.

7          THE COURT:  Okay.  You tell me in your own words

8   what you did that makes you think you are guilty of this.

9          THE DEFENDANT:  Your Honor, I was the supervising

10  pharmacist at 888 Pharmacy located in Brooklyn, New York.  And

11  I was with other people, we all agree upon --

12         THE COURT:  I'm sorry, could you speak up a little

13  bit?

14         Maybe we'll use the microphone, Dennis.  Thank you.

15         THE COURTROOM DEPUTY:  Okay.

16         THE DEFENDANT:  Your Honor, I was the supervising

17  pharmacist for 888 Pharmacy from September 2020 to

18  February 2023 when it closed down.  And I and other people

19  agreed upon -- we agreed to carry out a scheme where we fill

20  medically unnecessary prescription from the podiatrist, the

21  clinic, to gain profit.

22         THE COURT:  To, I'm sorry?

23         THE DEFENDANT:  To gain profit.

24         THE COURT:  Right.

25         How did you do that?

*Proceedings*                                          22

1          THE DEFENDANT:  We referred the patients to the

2    podiatrist where they get prescription from the podiatrist and

3    send to our pharmacy, and we fill it and dispense it to the

4    patients.

5          THE COURT:  And did you give the podiatrist

6    something in return?

7          THE DEFENDANT:  Yes.  We paid their rent and we pay

8    for some of the staff salary.  And the pharmacy owner, they

9    offer me 25 percent of the pharmacy share for two-hundred-

10   fifty-thousand-dollar, which I pay one-hundred-thousand-dollar

11   in cash or check.  And then the other hundred-fifty-thousand-

12   dollar, it was -- it was deducted from the profit in the

13   beginning until that hundred-fifty-thousand-dollar was

14   completely deducted from my portion.  And then I start getting

15   profit from the pharmacy operation.

16         THE COURT:  And then you, I'm sorry?

17         THE DEFENDANT:  And then I start getting profit from

18   the pharmacy operation.

19         THE COURT:  You started getting what?

20         THE DEFENDANT:  A profit.

21         THE COURT:  Right.  I see.

22         THE DEFENDANT:  From the pharmacy.

23         THE COURT:  I see.

24         Anything further I should ask, Mr. Estes?

25         MR. ESTES:  Just to clarify, Your Honor.

1          I think I may have heard you say knowingly and

2    intentionally, but I just want to clarify I think it should be

3    knowingly and willfully.

4                THE COURT:  Knowingly and willfully.

5                MR. ESTES:  I just want to confirm that the

6    defendant did so knowingly and willfully.

7                THE DEFENDANT:  Yes, I knew that was wrong and

8    illegal, and I was willingly to be part of the scheme.

9                MR. ESTES:  And the Government would also just note

10   and request the defendant to acknowledge or stipulate that the

11   Medicare and Medicaid programs are health care benefit

12   programs under Section 24(b)?

13               THE DEFENDANT:  Yes.

14               MR. ESTES:  That's it for the Government.

15               THE COURT:  That's it; okay.

16               Based on the information that you have given to me,

17   I find that you are acting voluntarily, that you fully

18   understand your rights and the consequences of your plea, and

19   that there is a factual basis for your plea.  And I,

20   therefore, accept your guilty plea to the charge in the

21   Information.

22               THE DEFENDANT:  Thank you, Your Honor.

23               THE COURTROOM DEPUTY:  Let's see.

24               THE COURT:  This is the defendant's first

25   appearance, right?

*Proceedings*                                                    24

1        MR. ESTES:  Yes, Your Honor.

2        THE COURT:  All right.

3        THE COURTROOM DEPUTY:  Sentencing tentatively is

4   September 27th at 11:00 a.m.

5        THE COURT:  Mr. Lai, I can see that you have already

6   signed the conditions of your appearance bond, so you

7   understand that it is a bond in the amount of $100,000.

8        It is unsecured, so you don't have to put up any

9   money, but if you fail to appear in court when you are

10  supposed to appear in court, the Government will make sure

11  that it gets that much money out of you.  Okay?

12       THE DEFENDANT:  Yes, I do, Your Honor.

13       THE COURT:  Also, you must submit to Pretrial

14  supervision and report to Pretrial Services as directed.

15       And you are subject to random home contacts and

16  verification of employment as deemed appropriate to monitor

17  compliance with the conditions of release.

18       And you shall notify Pretrial Services as soon as

19  possible of any arrest.

20       You are to surrender your passport to Pretrial

21  Services, which I gather you have already done.  Is that

22  correct?

23       MR. SPODEK:  No, Judge, but I do have it here.

24       THE COURT:  Okay.  And not obtain a passport or any

25  other international travel document.

*Proceedings*                                                    25

1          You are confined to New York State and New Jersey,

2     right?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And you are not to submit claims

5     directly or indirectly to Medicare or Medicaid.

6          Do you understand all the conditions?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Okay.  And is that your signature on the

9     bond?

10         We are going to have to send it down to you to make

11    sure.

12         THE DEFENDANT:  Yes, that's my signature.

13         THE COURT:  Okay.  All right, I am signing it.

14         And let me just ask you, the second page of the bond

15    sets forth, among other things, the advice and penalties and

16    sanctions.

17         Did you review all of that?

18         THE DEFENDANT:  Yes, I did, Your Honor.

19         THE COURT:  And did you understand it?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Okay.

22         MR. SPODEK:  Your Honor, if I may.

23         THE COURT:  Yes.

24         MR. SPODEK:  I did speak to the Government briefly.

25    Mr. Lai had two trips domestically, one in Connecticut and one

*Proceedings*                                                    26

1   in Pennsylvania with his family.  I understand the Government

2   has no objection.

3           I am happy to file a letter, but I did want to bring

4   it to Your Honor's attention for him to take those trips.

5           THE COURT:  That's fine, if you'd just file a

6   lawyer.

7           MR. SPODEK:  Yes, Your Honor.

8           THE DEFENDANT:  Thank you, Your Honor.

9           THE COURTROOM DEPUTY:  Thank you.

10          MR. SPODEK:  Thank you.

11          (Matter adjourned.)

12

13

14

15

16

17

18

19                      *     *     *     *     *

20

21  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
22

23      /s/ Stacy A. Mace                    June 27, 2023
    _____      _____
24      STACY A. MACE                        DATE

25