

**SPODEK LAW GROUP** P.C.
*Treating you like family since 1976*

**Todd A. Spodek, Esq.**
Direct Dial: (347) 292-8633
ts@spodeklawgroup.com

May 26, 2026

▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

The Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: United States v. Zhibin Lai
     Criminal Case No. 23-246
     Eastern District of New York

Dear Judge Gujarati:

As Your Honor is aware, this office represents Zhibin Lai (hereinafter "Mr. Lai," or "Lai,") in the above-captioned matter, which is presently scheduled for sentencing before the Court on **June 15, 2026**. Through the undersigned counsel, Mr. Lai respectfully submits this memorandum in support of his request for a non-custodial sentence.

On June 27, 2023, pursuant to a written plea ▨▨▨▨▨▨▨▨▨▨▨ with the Government, Mr. Lai pleaded guilty to Count One of the Information charging conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. The offense carries a maximum term of imprisonment of ten years and no mandatory minimum term of imprisonment. *See* 18 U.S.C. §§ 1347, 1349.

The Presentence Investigation Report ("PSR") calculates a Total Offense Level of 19 and a Criminal History Category of I, resulting in an advisory Guidelines range of 30 to 37 months' imprisonment. (PSR ¶¶ 67, 70). The U.S. Probation Department, however, recognized that the advisory range is driven primarily by the substantial loss amount attributed in this case and ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ In light of those considerations, Probation has recommended a sentence of 12 months and one day imprisonment — substantially below the advisory Guidelines range. *See* **Exhibit A** for U.S. Probation's sentencing recommendation.

1

Mr. Lai fully recognizes the seriousness of his conduct and accepts complete responsibility for his actions. Nothing contained in this submission is intended to minimize his offense, diminish the harm caused, or avoid accountability. To the contrary, Mr. Lai has endeavored since the outset of this case to demonstrate genuine acceptance of responsibility ▨▨▨▨▨ ███████, compliance, remediation, and post-offense conduct.

While Mr. Lai is grateful for the U.S. Probation Department's recommendation of a below-Guidelines sentence, he respectfully submits that a sentence of probation, together with the significant collateral consequences he has already suffered and will continue to suffer, is sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## LEGAL STANDARD

As the Court is aware, the Guidelines are not binding, pursuant to *United States v. Booker*, 125 S.Ct. 738, 2005 WL 50108 (Jan. 12, 2005) and they do not incorporate all of the sentencing purposes or factors set forth in 18 U.S.C. §3553(a). The Supreme Court, in *Pepper v. United States*, 562 U.S. 476, 491(2011), emphasized that a sentencing judge assumes "an overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." Those purposes are "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." In addition, the Court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant, and the kinds of sentences available. 18 U.S.C. 3553(a). A court must impose a lesser sentence if it is sufficient to comply with Section 3553(a)'s sentencing purpose. *United States v. Dorvee*, 616 F.3d 174,183 (2d Cir. 2010).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society, and our economy, parsimony in incarceration is encouraged. *United States v. Eiflaar*, 255 F. Supp. 3d 394, 396 (E.D.N.Y. 2017) *citing* 18 U.S.C. § 3553(a); National Research Council of the National Academies, The Growth of Incarceration in the United States; Exploring Causes and Consequences (2014) ("Parsimony: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy."). "A sentencing judge has very wide latitude to decide the proper degree of punishment for

2

an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008).

The Guidelines serve as "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 59-50 (2007). Although the Court "may not presume that the Guidelines range is reasonable", *United States v. Jones*, 740 F.3d 127, 144 (3d Cir. 2014), sentences falling within the Guidelines range are more likely to be reasonable than those falling outside the range. *United States v. Woronowicz*, 744 F. 3d 848, 852 (3d Cir. 2014). However, in the instant case, Mr. Lai's request for a noncustodial sentence is supported by the §3553(a) factors.

## THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Lai entered a plea of guilty to the sole count of the Information charging him with conspiracy to commit healthcare fraud, in violation of 18 U.S.C. § 1349. While this offense is undoubtedly serious, it is important to note at the outset that the Lai's conduct did not include weapons, violence, threats, or physical injury.

As set forth in the PSR, Lai's conduct primarily involved his work as a supervising pharmacist and partial owner of 888 Pharmacy[1], where medically unnecessary prescriptions and over-the-counter products were dispensed pursuant to fraudulent practices already in place. (PSR ¶¶ 27, 39). Importantly, the PSR does not allege that Mr. Lai created the scheme, recruited participants into the broader conspiracy, controlled the network of pharmacies involved, directed the financial structure of the operation, or exercised leadership authority over the overall enterprise. Rather, the PSR identifies other individuals as the primary organizers and operators of the broader fraud scheme. (PSR ¶¶ 35-45).

This distinction matters. While Mr. Lai unquestionably bears responsibility for his own conduct, his relative culpability is materially different from that of those who conceived of, directed, and controlled the larger conspiracy. The offense conduct attributable to Mr. Lai must therefore be evaluated in its proper context under 18 U.S.C. § 3553(a).

Additionally, Mr. Lai's conduct following his arrest further distinguishes this case from the typical white-collar fraud prosecution. He self-surrendered and did not impede or obstruct justice at any point. (PSR ¶¶ 51, 54). He accepted responsibility early,

---

[1] The PSR erroneously refers to the relevant pharmacy as "88 Pharmacy" instead of "888 Pharmacy." Both the Government and defense counsel raised this correction with U.S. Probation in respective letters.



Lai also complied fully with the financial obligations imposed as part of his plea agreement, including satisfying the $327,959 forfeiture money judgment in full prior to sentencing. *See* **Exhibit B** for a copy of the receipt of the satisfaction of the forfeiture money judgment in this matter. Such conduct reflects meaningful remorse, accountability, and a genuine effort to remediate the consequences of his actions. Accordingly, the PSR applies Guidelines reductions for acceptance of responsibility pursuant to USSG § §3E1.1(a) and (b).

Further, Lai received an additional two-level reduction of his total offense level as a "Zero-Point Offender" pursuant to USSG §§4C1.1(a) and (b). (PSR ¶ 66). Not only does this reflect Lai's history of law-abiding behavior, but also reveals mitigating factors as to his conduct in this matter, as this Guideline reduction is not applicable to defendants who play an aggravating role, use violence or weapons, cause "substantial financial hardship", or engage in a "continuing criminal enterprise." USSG §§4C1.1(a).

Finally, as recognized by the U.S. Probation Department in its below-Guidelines sentencing recommendation, the substantial loss amount significantly increased the Guidelines range in this matter, without taking into account the mitigating circumstances outlined herein. (Exhibit A; PSR ¶ 58). There is broad consensus that the loss table under §2B1.1, formulated without an empirical approach, produces unduly harsh sentencing that bears little or no connection to the seriousness of the offense. *See, e.g., United States v. Johnson*, 2018 WL 1997975, *3 (S.D.N.Y. Apr. 26, 2018) (criticizing lack of "empirical approach" for loss guideline; "That this situation continues unabated is a great shame for the many offenders sentenced…who do not receive a sentence that makes any sense for the actual crime of conviction."); *United States v. Fabish*, 2015 WL 4637013 *2 (E.D.N.Y. Aug. 3, 2015) ("The loss table is but one example of the seemingly mindless acceleration of penalties for economic crimes incorporated in the current Sentencing Guidelines regime."); *United States v. Moody*, 2013 U.S. Dist. LEXIS 109506 *13*-14 (D. Colo., Aug. 15, 2013); *United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012) ("numbers assigned…apear to be more the product of speculation , whim, or abstract number-crunching than of any rigorous methodology"), *aff'd*, 747 F.3d 111 (2d Cir. 2014); *United States v. Lenagh*, 2009 WL 296999, at *3 (D. Nef. Feb. 6, 2009) (giving fraud Guidelines "less deference" for not being empirically grounded); *United States v. Parris*, 573 F. Supp. 2d 744, 745, and 754 (E.D.N.Y. 2008) (criticizing loss tables as "patently absurd" and a "black stain on common sense."). Courts have concluded that imposing sentences corresponding to the loss tables would "effectively

4

guarantee that many such sentences would be irrational on their face." *Gupta*, F. Supp. 2d at 351.

## THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The Court is not only tasked with evaluating what Mr. Lai did, but also who he is as a person outside the context of the offense. A review of the record reveals that Lai is a kind, non-violent, hard-working, supportive, and dedicated husband and father. Since his pretrial release, he has remained fully compliant with all court-ordered conditions of his release (PSR ¶ 4). In early 2024, he graduated from the Focus Forward Project, a 13-week course providing reentry and educational services to federal defendants. *See* **Exhibit C** for a copy of Lai's Certificate of Achievement from the Focus Forward Project. His compliance, lack of criminal history, rehabilitative conduct, and genuine remorse demonstrate that he does not pose a risk of danger to the public.

This is not a case involving a career fraudster, an organizer of a sprawling criminal enterprise, or an individual who sought to obstruct justice, conceal assets, or evade responsibility. Instead, it is the case of a first-time offender who became involved in a pre-existing fraudulent operation, made profoundly poor decisions, and now faces the devastating consequences of those decisions.

Mr. Lai's life story is one defined by sacrifice, perseverance, hard work, and an enduring commitment to his family and community. The portrait that emerges from both the PSR and the numerous letters submitted on his behalf is remarkably consistent: Mr. Lai is a devoted father, loving husband, dependable son and brother, and loyal friend who has spent nearly his entire life placing the needs of others above his own.

Lai immigrated to the United States from China with his family in 1999 at approximately fourteen years old. (PSR ¶ 79). As reflected in both the PSR and the heartfelt letter submitted by his father, the family arrived in New York with limited financial resources and significant language barriers. His parents worked long hours in factories and restaurants simply to survive, leaving Mr. Lai to assume substantial responsibilities at a young age. His father explains that while his parents struggled to navigate life in a new country, Mr. Lai helped raise his younger sister, cooked meals for the family, translated documents, and became "an indispensable pillar" within the household. *See* **Exhibit D-1** for a copy of the letter of support submitted by Lai's father, Xuchu Lai.

Despite those challenges, Mr. Lai ultimately excelled academically. He graduated from the University at Buffalo with a Doctor of Pharmacy degree in 2010. (PSR ¶ 93). Friends who attended pharmacy school with him consistently describe the discipline and determination he demonstrated throughout those years. Dong Bing Liu, a longtime

5

friend and fellow pharmacist, recalls that Mr. Lai worked part-time jobs while attending pharmacy school and "never once complain[ed]." *See* **Exhibit D-2** for a copy of the letter of support submitted by Dong Bing Liu. Another longtime friend, Chung Wong, described Lai simply as "one of the most helpful, genuine, kind-hearted, and responsible people I have known to date." *See* **Exhibit D-3** for a copy of the letter of support submitted by Chung Wong.

The letters also demonstrate that Mr. Lai's defining characteristic has long been his unwavering commitment to others. Multiple individuals describe him as the person family and friends call first during moments of crisis or hardship. For example, Mr. Wong recounted how Lai drove across town at 1:00 a.m. without hesitation after learning his car had broken down, and Mr. Liu explained that when his father suffered a psychiatric emergency, Lai immediately opened his home so he could remain close to his family during the crisis. Ex. D-3, D-2.

Most notably, the letters uniformly portray Mr. Lai as an extraordinarily devoted family man. He resides in a multigenerational household and serves as a primary caretaker and support system not only for his wife and children, but also for his parents, grandmother, and extended family. (PSR ¶¶ 81-85). His cousin, Gloria Gao, describes him as "the backbone of our extended family," noting that multiple relatives rely on him daily for caregiving, transportation, financial assistance, and practical support. *See* **Exhibit D-4** for a copy of the letter of support submitted by Gloria Gao.

Lai's sister, Phoebe Lai, explains that he is "the bridge between generations" because he is the family member relied upon to translate official documents, schedule appointments, manage household issues, and assist elderly relatives in navigating essential systems. Ms. Lai further expressed concern for the "immediate and significant" negative impact her brother's incarceration would cause on the entire family. *See* **Exhibit D-5** for a copy of the letter of support submitted by Phoebe Lai.

Above all else, however, Mr. Lai is a devoted husband to his wife, Sau Lee ("Lily") Wong, and a loving father to their two young sons, Logan (age seven) and Eason (age four). (PSR ¶ 81). The letters submitted on his behalf repeatedly describe the central role he plays in their lives. His wife explains that despite long work hours, he consistently prioritizes spending meaningful time with his children — reading with them, helping with school projects, and ensuring he remains actively involved in their daily routines. *See* **Exhibit D-6** for a copy of the letter of support submitted by Sau Lee Wong. Ms. Gao characterizes Lai as "a fully present, active father" whose steady guidance has been critical to his children's emotional development and well-being, and friends similarly describe him as patient, gentle, calm, and deeply engaged with his children's lives. *See Ex. D-3, D-3.*

The consistency of these accounts is striking. Friends, relatives, and professional colleagues from different stages of Mr. Lai's life all describe the same person: quiet, dependable, compassionate, hardworking, and deeply committed to his family and community. As one longtime friend, attorney Ada Chan aptly summarized, "He may not be extraordinary to the world, but he is irreplaceable to the people who know him." *See* **Exhibit D-7** for a copy of the letter of support submitted by Ada Chan.

Mr. Lai is also deeply involved in his community. For the past several years, he and his wife have participated in and performed with a traditional Chinese "lion dance" team during Lunar New Year celebrations. This longstanding cultural tradition is intended to spread joy and good fortune for the coming year, and the team's performances raise funds for charitable causes. Ex. D-6. Mr. Lai is deeply passionate about this work, and it brings him particular joy to involve his children so they can remain connected to their cultural heritage and roots. *See* **Exhibit E** for a photo of Lai and the dance team outside a Buddhist Temple during a Lunar New Year celebration.

In every meaningful respect, Mr. Lai's history and characteristics demonstrate that the conduct underlying this case is profoundly inconsistent with the life he otherwise built and the person his family, friends, and community have known him to be for decades. He respectfully requests that the Court consider his history and characteristics together with his extraordinary post-offense conduct, as well as the consequences he has already suffered, and impose a noncustodial sentence.

The collateral consequences Mr. Lai has already suffered are substantial and enduring. Most significantly, this case has effectively ended the professional career he spent years building. His pharmacist license is now inactive and he is no longer able to practice pharmacy. (PSR ¶¶ 93, 95). The plea agreement further requires his exclusion from Medicare, Medicaid, and all federal health care programs, a consequence that forecloses any realistic return to the profession in which he was trained. (PSR ¶ 128).

The impact of that loss has been profound. After losing his pharmacy position, Mr. Lai was unemployed for approximately eleven months, during which his sister helped him pay his mortgage, and he later accepted onerous work at a UPS warehouse before suffering a laceration to his head during a workplace injury. He then transitioned to work at a liquor and wine store, where he is still employed. (PSR ¶¶ 89, 96-99). His wife explains that he has had to rebuild his life outside the only profession he knew, including completing physically demanding shifts at UPS and then working long shifts at the wine store to support the family. Ex. D-6.

Despite this major career shift, Lai's incredible work ethic remained unchanged, as his sole motivation has been to provide for his family. The PSR notes that from January 26 to February 13, 2026, Lai worked 100 hours at the liquor and wine store,

7

and earned $2,232.14 for that period. (PSR ¶ 96). His cousin notes that after losing his career as a pharmacist, Mr. Lai worked demanding graveyard shifts and often slept only one or two hours so he could still drive his children to school and attend their activities. Ex. D-4.

In addition to professional ruin, Mr. Lai faces serious immigration-related consequences despite being a naturalized United States citizen. The PSR expressly notes that his guilty plea "carries a risk of denaturalization and deportation", and the plea agreement confirms that immigration consequences may follow from the conviction. Mr. Lai has been in the United States for twenty-seven years, and has been a naturalized citizen for almost twenty years. (PSR ¶ 97). The possibility that Mr. Lai could ultimately face the loss of his citizenship and removal from the country where he has built his life, raised his family, and supported his community for decades constitutes an extraordinary and deeply personal consequence flowing from this conviction.

This case has also imposed substantial financial and familial hardship. Mr. Lai consented to a $327,959 forfeiture money judgment, which he was required to satisfy in full before sentencing, and he remains subject to restitution obligations. His wife explained that, in light of his absence and diminished earning capacity, she has been forced to balance her full-time position at a bank with additional per diem physical therapy work, and anticipates needing to take on even more shifts to support the household. Ex. D-6. These consequences are neither remote nor speculative; they have already fundamentally altered Mr. Lai's career, finances, family structure, and future.

Taken together, the totality of the circumstances presented here demonstrates that Mr. Lai is not someone who poses a danger to the community or presents a meaningful risk of recidivism. This offense, for which Lai was not an organizer, manager, or supervisor, occurred over a discrete period in an otherwise law-abiding life marked by hard work, devotion to family, and service to others. Since the inception of this case, Mr. Lai has accepted responsibility, cooperated with the Government, complied fully with his financial and pretrial release obligations, maintained or attempted to maintain lawful employment, and continued supporting the many individuals who rely upon him daily.

The Court is therefore presented not with a defendant seeking to avoid accountability, but with a first-time offender who has already experienced extraordinary punishment and who has demonstrated through his conduct that he is capable of rehabilitation and committed to living a lawful and productive life moving forward. Under these unique circumstances, a sentence of probation would adequately reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public, while avoiding a sentence greater than necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

**CONCLUSION**

For all of the foregoing reasons, Mr. Lai respectfully requests that this Court impose a non-custodial sentence and sentence him to a term of probation for any duration deemed appropriate by the Court, together with any additional conditions the Court believes necessary and proper.

Mr. Lai fully understands the seriousness of his conduct and the breach of trust inherent in his offense. He does not seek to minimize his actions, nor does he ask this Court for sympathy untethered from accountability. Rather, he respectfully asks the Court to consider the entirety of his life, his history and characteristics, his genuine and documented remorse, ◼◼◼◼◼◼◼◼◼◼◼◼, the extraordinary collateral consequences he has already endured, and the overwhelming evidence that this conduct is inconsistent with the person he has otherwise proven himself to be throughout his life.

Under all of the circumstances presented, a sentence of probation is sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,
**Spodek Law Group P.C.**
Todd A. Spodek
/S/ Todd A. Spodek


cc:    Assistant United States Patrick Campbell (By Email).

9